IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* BLANKENSHIP GROUP, INC. and BLANKENSHIP GROUP, INC., | * * * * | |
| Plaintiffs, | * * | CV 423-217 |
| v. | * * | |
| POETTKER CONSTRUCTION COMPANY; ZODIAC-POETTKER HBZ JOINT VENTURE II, LLC; and LIBERTY MUTUAL INSURANCE COMPANY, | * * * * * | |
| Defendants. | * * | |

## O R D E R

Before the Court is Defendants' motion to compel arbitration and stay pending arbitration (Doc. 20) and the Parties' stipulation and joint motion regarding arbitration and stay (Doc. 27). For the following reasons, Defendants' motion (Doc. 20) is **GRANTED**, subject to the Parties' stipulation (Doc. 27), which is also **GRANTED**.

### I. BACKGROUND

Plaintiffs filed suit on August 3, 2023. (Doc. 1.) Defendant Poettker Construction Company ("PCC") answered and filed a counterclaim on September 25, 2023. (Doc. 14.) On October 3, 2023, Defendants moved to compel arbitration and to stay pending

arbitration. (Doc. 20.) On October 13, 2023, Plaintiffs filed an Amended Complaint, the operative complaint. (Doc. 22.)

Plaintiffs bring claims for breach of contract and under the Miller Act, 40 U.S.C. §§ 3131, et seq. (Id. at 2.) On June 15, 2021, the United States Army Corps of Engineers ("USACE") awarded Contract Number W912HN21C3005 to Zodiac-Poettker HBZ Joint Venture II, LLC ("Zodiac") to construct an aircraft hangar facility at Hunter Army Airfield in Savannah, Georgia (the "Project"). (Id.) As required by the Miller Act, Zodiac, as principal, and Liberty Mutual Insurance Company ("Liberty"), as surety, provided a Payment Bond to the USACE for the benefit and protection of all persons supplying labor and materials for the Project. (Id.) PCC and Blankenship Group, Inc. ("BGI") executed a subcontract agreement (the "Subcontract") dated September 9, 2021, under which BGI was to provide and install the structural concrete for the Project. (Id.)

The Subcontract stated PCC entered a prime contract with the USACE for the Project, but Plaintiffs assert it was actually Zodiac that contracted with USACE as the general contractor. (Id. at 3.) Plaintiffs believe no contract or subcontract exists between Zodiac and PCC for work on the Project; thus, they argue PCC acted as an agent of Zodiac in executing the Subcontract with BGI, and Zodiac is a party to the Subcontract. (Id.)

Pursuant to the Subcontract, PCC agreed to make all payments due to BGI thereunder, and timely pay BGI for all work performed

2

and materials supplied to the Project. (Id.) Under Article 3 of the Subcontract and the Federal Prompt Payment Act, 39 U.S.C. § 3905 ("FPPA"), PCC and Zodiac were required to pay BGI within ten days of PCC and/or Zodiac's receipt of payment from USACE. (Id.) BGI claims it performed its obligations under the Subcontract, including all conditions precedent to receipt of full payment for all Subcontract work, and all additional amounts due to modifications of the Subcontract, except to the extent completion was prevented by PCC or Zodiac. (Id. at 3-4.) BGI's work was halted when PCC wrongfully, without proper cause, and in violation of the Subcontract, terminated the Subcontract. (Id. at 4.)

Plaintiffs assert PCC and Zodiac received payment from USACE for most, if not all, of the work BGI performed on the Project, except amounts withheld by USACE due to defaults by Zodiac under the main contract. (Id.) Despite demands for payment, PCC failed and refused to pay BGI the remaining balances owed, in breach of the Subcontract and the FPPA. (Id.) Plaintiffs claim PCC and Zodiac owe BGI $304,813.19, including $53,779.22 for changes to the work, for which PCC wrongfully refused to execute a formal change order. (Id.) PCC and Zodiac breached the Subcontract by failing to make payment, wrongfully terminating it, and causing BGI to lose profits it would have made performing the remaining work. (Id.) Thus, by wrongfully terminating the Subcontract, PCC and Zodiac damaged BGI in the amount of $283,138.12. (Id.) Based

3

on these allegations, Plaintiffs bring two claims: (I) breach of contract; and (II) Miller Act violation. (Id. at 5-6.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotation marks and citations omitted). The FAA requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). The Supreme Court has "made clear that the strong federal preference for arbitration of disputes expressed by Congress in the [FAA] must be enforced when possible." Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003). Further, the Supreme Court found "the FAA applies to all arbitration agreements involving interstate commerce, including employment contracts . . . ." Id. at 1258 n.2 (citing Cir. City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).

"[T]he party seeking to compel arbitration has the initial burden of producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting [the court] authority to dismiss or stay [the plaintiff's] cause of action and to compel arbitration." Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019)

4

(citation and internal quotation marks omitted). If the party for arbitration meets its burden of production, the burden shifts to the party opposing arbitration to show why the court should not compel arbitration. <u>Bhim v. Rent-A-Ctr., Inc.</u>, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).

### III. DISCUSSION

As an initial matter, the Court has jurisdiction over this matter pursuant to the Miller Act and 28 U.S.C. § 1367(a). (Doc. 22, at 2.) Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). (<u>Id.</u>) Defendants moved to compel arbitration on October 3, 2023, arguing the Subcontract contains a mutual binding arbitration agreement in Article 11.2 (the "Arbitration Agreement"). (Doc. 20, at 2.) The Arbitration Agreement provides:

> All claims, disputes and other matters in question arising out of, or relating to, this Agreement or the breach thereof shall be decided by Arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon in accordance with application law in any court having jurisdiction thereof. The prevailing party in any such arbitration or court action shall be entitled to recover its attorneys' fees, expert witness fees, investigation costs and related expenses from the other party.

(Doc. 20-1, at 14.) The Subcontract also contains the following warning above the signature block: "**<u>THIS AGREEMENT CONTAINS A BINDING ARBITRATION CLAUSE WHICH MAY BE ENFORCED BY THE PARTIES</u>**."

5

(Id. at 16.)  Defendants argue the FAA applies because the Subcontract containing the Arbitration Agreement is a "contract evidencing a transaction involving commerce." (Doc. 20, at 3 (quoting 9 U.S.C. § 2).)  Defendants request the Court compel BGI to submit its claims against PCC and PCC's counterclaim to binding arbitration, and to stay this action against all Defendants pending arbitration.  (Id. at 6.)

On June 4, 2024, the Parties filed a stipulation and joint motion regarding arbitration and the stay.  (Doc. 27.)  The Parties now move the Court to grant Defendants' motion (Doc. 20) subject to the stipulation among all Parties.  (Doc. 27, at 1.) Specifically, BGI and PCC stipulate the claims alleged against each other, including PCC's counterclaim, will be decided pursuant to binding arbitration.  (Id.)  The Parties agree each of them will be bound by the arbitration award, subject to review pursuant to the FAA.  (Id. at 2.)  The Parties also agree the Court should stay the case pending the outcome of the arbitration between BGI and PCC, and that the Court is entitled to implement a stay pursuant to the FAA.  (Id.)

Since the Parties agree arbitration is appropriate as to the claims and counterclaims between BGI and PCC, the Court **GRANTS** Defendants' motion to compel arbitration (Doc. 20) pursuant to the Parties' stipulation.  The Parties also request the Court stay this action pending arbitration.  (Id. at 6; Doc. 27, at 2.)  The FAA provides that once a district court is "satisfied that the

issue[s] involved in [a] suit . . . [are] referable to arbitration," the district court "shall on application of one of the parties stay the trial of the action" until the arbitration is complete. 9 U.S.C. § 3. The Parties have agreed to arbitrate; thus, the Court **STAYS** this case pending arbitration.

### IV. CONCLUSION

For the foregoing reasons, Defendants' motion to stay and compel arbitration (Doc. 20) is **GRANTED**, subject to the Parties' stipulation (Doc. 27), which is also **GRANTED**. **IT IS HEREBY ORDERED** that the Parties **SHALL ARBITRATE** the claims and counterclaims pending between BGI and PCC, and the Clerk is **DIRECTED** to **STAY** this case pending arbitration. Because the Parties have not yet scheduled arbitration, the Parties **SHALL FILE** a joint status report with the Court **SIX MONTHS** from the date of this Order with follow-up status reports every **NINETY (90) DAYS** until arbitration has concluded.

**ORDER ENTERED** at Augusta, Georgia, this 24th day of June, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA